## SAPER v. FIRST NAT. BANK OF GLEN COVE et al.

### No. 5189.

District Court, E. D. New York.

Feb. 2, 1931.

Israel Akselrod, of New York City, for trustee.

Cullen & Dykman, of Brooklyn, N. Y. (T. J. Shea, of Brooklyn, N. Y., of counsel), for defendants.

GALSTON, District Judge.

This action is brought to recover the sum of $6,730.20 paid by Mollie Mayers to the defendant bank in three payments, as follows: December 26, 1929, $1,200; December 30, 1929, $3,500; January 3, 1930, $2,030.20.

The petition in bankruptcy was filed on January 20, 1930. The complaint sets forth two causes of action; one alleging that the payments were made while the bankrupt was insolvent, and with the knowledge on the part of the bank or reasonable cause on the part of the bank to believe that Mollie Mayers was then insolvent and that the effect of such payments would be to give the bank a greater percentage of its debt than other creditors of the same class then existing, in violation of section 60b of the Bankruptcy Act (11 USCA § 96(b); the second cause of action alleges that the payments were made in pursuance of a scheme to hinder, delay, and defraud the creditors of the bankrupt, in violation of section 67e of the Bankruptcy Act (11 USCA § 107(e).

The proofs show that the bankrupt had been engaged in business as a dealer in radio and miscellaneous supplies in Glen Cove,

Long Island. She was assisted in the conduct of her business by her son-in-law Bronston.

On November 4, 1929, she was indebted to the bank in the sum of $7,200 on three notes, one of $1,000, a second of $3,500, both of which matured on December 3, 1929, and a third of $2,500, which matured on December 4, 1929. The bank had no collateral. On November 4, 1929, there was a fire on her premises. For the damage caused she made a claim against the insurance companies of $10,000. On November 6th, Bronston, the manager of defendant's business, went in to see Rudyard, the cashier of the bank, and told him of the fire and of his intention to liquidate the business. Rudyard suggested to Bronston that he consult Mr. McManus, counsel for the bank. If not the general counsel for the bank, he acted for the bank in various matters and continued to act for the bank after Bronston conferred with him.

Pursuant to the advice of Rudyard and the bank's counsel, Mollie Mayers made an assignment for the benefit of creditors to Rudyard. This assignment was executed and delivered for the purpose of liquidating the business and distributing the assets among the creditors of Mollie Mayers.

On November 27, 1929, a meeting of the creditors of Mollie Mayers was called by Rudyard. The meeting was addressed by Mr. McManus, who read a proposed creditors' agreement and the assignment to Rudyard. Rudyard produced a balance sheet which he had obtained from Bronston.

At the time of the filing of the petition, the bankrupt's indebtedness to creditors, exclusive of the bank, amounted to $16,875. All of those liabilities were in existence on December 26, 1929, the date of the first of the payments to the bank. The bankrupt's assets consisted of a stock of merchandise, which, when taken into custody by the receiver on January 25, 1930, was insured for the sum of $2,500, and which, when sold under order of the court at public auction, realized the gross sum of $1,404.40. In addition to the merchandise stock, the bankrupt at the time of the bankruptcy had accounts receivable in the sum of $5,889.48, of which the sum of $3,167 at the time of the bankruptcy was more than two years old. There were no other assets at the time of the filing of the petition, so that it appears that three weeks after the making of the payments complained of herein, the bankrupt had liabilities greatly in excess of her assets. There is no convincing evidence that the condition of the business was measurably sounder on December 26, 1930, than on January 20, 1930.

It is true that the bank did offer the testimony of one witness, Wheeler. He testified that his office is near the Mayers' store, and that between the time when the bankrupt's place was padlocked and the day on which he read a notice in the paper about the appointment of a receiver, he saw three trucks loaded with paints, radios, ice boxes and other things taken from the bankrupt's store that he did not recognize. He guessed at the value of the merchandise removed, placing a valuation of $5,000 thereon. He admitted that he had no knowledge of the value of such things as he had seen loaded on the trucks. Altogether his testimony is wholly insufficient to meet the plaintiff's proofs that on December 26, December 30, 1929, and January 3, 1930, Mollie Mayers was insolvent.

Nor is it possible to avoid the conclusion that Rudyard knew Mollie Mayers to have been insolvent at the time that the bank obtained these payments. In addition to the fact that he was an assignee in control of the business shortly after the fire and continued in control until shortly before the petition in bankruptcy was filed and the receiver appointed, the circumstances under which the payments were obtained point directly to a deliberate effort on the part of the bank to have itself preferred. The payments were admittedly the proceeds of the insurance claims.

Nor is it possible to understand why, if Rudyard believed Mollie Mayers to be solvent, he withheld information at the meeting of the creditors on November 27, 1929, of the assignment of the insurance claims by her to the bank. He had a superior knowledge of the condition of the business; that is, superior to that of any other creditor. Nevertheless, and despite the fact that the notes of the bankrupt were not secured, he obtained for the bank an assignment from Mollie Mayers, which, though apparently executed by Mollie Mayers on June 22, 1929, was not acknowledged by her until November 19, 1929; that is, two weeks after the fire.

On November 21, 1929, the bank wrote to the insurance company inclosing the assignment of the fire insurance policy in question. Now it is true that the First American Fire Insurance Company, in acknowledging the receipt of the bank's letter of November 21st, while raising some question in respect to the sufficiency of the assignment, said:

"However, if and when the said claim has been adjusted and is ready for payment, we

shall have no objection to joining the First National Bank of Glen Cove as a payee in our draft; and our records have been posted accordingly."

Nevertheless, Mr. McManus, as attorney for the bank, evidently considering the assignment of November 21st effective, on December 21, 1929, wrote to the First American Fire Insurance Company revoking the assignment. The revocation of the assignment, however, was then of no particular moment, for the payments of the proceeds of the claims on December 26, 1929, December 30, 1929, and January 3, 1930, evidenced a complete understanding between the bankrupt and the bank as to what disposition was going to be made of the insurance moneys.

Accordingly, the plaintiff has sustained the burden of showing not only that Mollie Mayers was insolvent at the time the payments were made to the bank, but that the bank knew of such insolvency and had reasonable grounds so to believe, and accepted the payments knowing that in so doing it would be preferred over other creditors of the same class.

The plaintiff may have a decree in accordance with this opinion. Settle decree on notice.

If this opinion is not in sufficient compliance with the rule requiring findings of fact and conclusions of law, submit findings of fact and conclusions of law in accordance therewith.